rounds of what was appealed and was very impressed with the grasp of the record by the government's counsel in particular. We often criticize which became the complement counsel. Thank you very much. Our next case is Sawgrass Tech v. Texas Original. When you're ready again, Mr. Walker. Thank you, Your Honor. May it please the Court, my name is John Walker. I'm here today on behalf of Sawgrass Technologies based in Mount Pleasant, South Carolina. As we see, the core issue for this position is whether or not a district court should grant priority to a previous action. Have you been to the Texas court yet? Have we been to the Texas court? Yet. In what sense do you mean? I mean in the sense that I'm trying to figure out if there's anything that we have jurisdiction to hear here. You have, there's been a motion to move something. It was a transfer of venue and that, and then you came to us. Is there a final action that is appealable? There was a motion to change venue before the district court in conjunction with the motion to dismiss. The district court did not grant the motion to change venue. The district court specifically said it was not granting the motion to change venue. What the district court said was we hereby grant the motion to dismiss based on the first to file rule and hereby transfer the action to the district court of Texas. The reason we're here is that the district court filed. So the action is still going on in Texas though, so I'm wondering if we have a final action. I would look at it this way, that the district court granted a motion to dismiss based on the first to file rule. Yes, we're here because they granted that motion to dismiss. And yes, the judge purported to transfer the action to Texas. And I know two things. I am not the arbiter of whether that was a dismissal or a transfer order. And ultimately, I have to do what's best to protect my client's interest. The order could have said that the district court finds in the first to file rule that the case can be transferred. The order didn't say- Let me ask you, where do you put your client? Let's assume, in order, if we do have jurisdictions because we've decided that the case was dismissed, does that invalidate the transfer? And let's assume, second question is, if we were to do that, if we were to affirm the motion to dismiss, does that mean that you have no standing? I mean, that you just have no claim or defense or other case going on in Texas? I would say that if you reverse, that you would be- No, if we, well, if we conclude that this was a motion to dismiss, you're telling us this was a motion to dismiss. Because that's the only way we would have jurisdiction. If it was just a transfer order, we would not correct. Well, it was filed as a motion to dismiss. The district court addressed it as a motion to dismiss. And I'll be the first to admit there is some ambiguity in the district court's order. I think the second question you asked- But if you want us to take jurisdiction, you have to persuade us, do you not, that the court indeed did dismiss the case? I can't go any farther than the language of the order. If this court concludes that the district court didn't mean what it said in the order, then the case was not dismissed. Have proceedings been going on in Texas? Have you participated? We have filed an answer in counterclaims in Texas. Yes, proceedings have been going on. Judge Gottlieb- Have you challenged in Texas that the court dismiss or transfer? Yes, sir. Have you made a decision? Our response to the Texas action was to file a motion to dismiss and change venue similar to the one that was filed against us in South Carolina. The Texas district court judge, Judge Gottlieb, refrained from ruling on that motion until there was an order issued in South Carolina. In other words, he was waiting to see what the South Carolina court would do. Why isn't that, in light of the first file of the rule, why isn't that a reasonable response? Oh, I think it's a very reasonable response. I think it was a wise response. Okay, and then after Judge Wooten ruled in South Carolina, then he decided- Precisely. And did he dismiss the motion? Yeah, he denied the motion because he said he looked at Judge Wooten's order, and I think he found that Judge Wooten's order, he had decided the issue, and therefore, Judge Gottlieb- And that construed Judge Wooten's order to be a transfer of the case to Texas, correct? And I will confess here that I don't know what his thinking was because it was a succinct order of a couple lines. But he's dealing with your case that was transferred in Texas, is he not? Yes. So he has to have recognized that someone transferred it from South Carolina to Texas. I believe that to be correct. What I don't want to suggest is that he went through a long analysis. Is there any prejudice to you at this point in Texas? You've got a fine, presidentially appointed federal judge looking at your case there. You certainly would recognize that we don't need to do that in two jurisdictions. The first one filed was Texas. Why are you so concerned? Where's the prejudice? I'm concerned because we brought the suit in South Carolina and believe that South Carolina is the appropriate forum for the disposition of the case. Where is the prejudice? The prejudice would be that we would have to mount our witnesses, go to Texas. We also believe that the South Carolina district court is already- If it's in South Carolina, they have to go to South Carolina and have the same complaint. That's not prejudice. That's simply the burden of litigation in the United States. Help me out here. What is it that you're really worried about? We believe we have the right to proceed, and we believe that the case that was filed against us was an anticipatory suit. We believe that there's a public policy at issue here in rewarding- If they did not have a reasonable apprehension of suit, of course they could not have filed in Texas, and you could challenge their jurisdiction to file. Have you done that? We did. We did, and that is the order that you had referred to, the motion that we filed at the time that Texas- And that has been appealed to this year. Right. That has not been appealed because once Judge Gabby in Texas had a copy of Judge Wooden's order, he, a couple weeks afterwards, denied our motion. And you haven't appealed that? No, we did not because that would be an interlocutory order. I see, I think I'm into- No, no, you're fine. You can get another several minutes here. All right. Oh, I'm still in my brief. Sorry. I would like to go back to where I started this, understanding that you have a significant question about jurisdiction, and that is- I've got significant questions about why you're here. You can't tell us that there's any prejudice to you, except that you don't want to be in Texas. Well, is that a reason to take your client's money and come to the appellate court? We believe that there is an erroneous decision to make. And that we believe that there is prejudice to our client, and that prejudice is that we will rely on the representations of Texas original graphics. Yes, I read the vitriolic charge in your reply brief about how they suckered you into not filing. You could have filed at any time, right? Well, I thought the judicial policy was to negotiate and then file a suit, as opposed to filing suit and negotiating. And I'm sure he's going to stand up and say you didn't negotiate fairly, that you threw out an exact same proposal that had been rejected 50 times, and they had no choice but to go file their suit in South Carolina, in Texas. Well, as their two representatives- If there are battles over the fairness of negotiation, those end up in court. Yes, that's correct. Well, we see it as more than that. It's not the fairness of negotiation, necessarily. We were told that there would be no need for suit. As we pointed out, Texas original graphics, both through Ty Wellborn and William Wellborn, stated, if you give us a licensing agreement we will not accept, then we are not going to court. We will stop selling the product. They did not say, no, we're going to sue you, or there won't be any litigation. They said, you just let us know. In fact, one of them said, don't serve us with papers. You're here because you're mad that they didn't take your last offer in the negotiation. No, we're here because they misrepresented what their intent was, and we relied on it. And not proceeding in South Carolina. Just to refine Judge Rader's question, so no, you're not mad because of that. You're mad because you gave them 20 days to consider a settlement agreement that they considered non-responsive, frivolous, duplicative, or whatever. And because they didn't take 20 days, and then tell you at the end of the 20 days, we're rejecting your settlement. They didn't live up to your time frame, so you could have run into court the next day. I'm not mad. My client is not mad. But that's what you're saying, in order to ensure fairness and the lack of bad faith, that's the way this case should have played out, right? You sent them a settlement. You said, respond, you need to respond by the 20th. Right before that. If that just answers my question, then I'll let you respond. Yes, we said, yes. So is it your position that in order to avoid what you call bad faith or lack of fairness or whatever, they should have waited until the 20th, rejected the settlement so that you could go into court the next day? I think that's one thing. But I think more important than that, I don't think it's simply the negotiation. What we have to take a look at are the statements in the May 2, 2005 letter. Both Ty Wellhorn and William Wellhorn said, we are not going to go to court under any circumstances. Even if you give us an offer that we don't find acceptable, we're not going to see it. Don't serve us with papers. You just tell us that you're thinking of filing soon, and we will stop selling. We had no reason to know that there was any race to the courthouse. As the Supreme Court said in Caritas, it's not a question of equally all of this back and forth over the negotiations have any effect on this court at all. Why wouldn't this court just say, there's a first filer rule. It was properly acknowledged by the court in South Carolina. End of story. I would say that it's important to this court for the public policy reasons that we cite. Most are best elucidated by the district court cases that we cite, and Dabouts, and NSI. Where those courts said that there is a strong judicial policy. The party should be encouraged to negotiate. The court should not encourage parties to lead other parties into thinking that they're in negotiations. They want us to arbitrate settlement disputes. It's not a settlement dispute. I'm not asking you to arbitrate a settlement dispute. I'm asking you to look at the unimpeached record that they said they were not going to court. If you rule in their favor, what you're saying is we should have ignored them and filed soon. We should go to war and then negotiate instead of negotiating and then see if a war is necessary. They told us, hey, we're going to stop selling. I do see I'm in my rebuttal. Thank you, Mr. Baxter and Mr. Hastings. Good morning, Your Honors. May it please the court. I believe Your Honors hit on the main issue that is here today, which is health jurisdiction. Did your client represent clearly to the other side that they knew they were never going to go to court over this issue and they were just going to stop selling if that was the situation? No, Your Honor. I would suggest that there's not a lot of correspondence in the record, but the correspondence is there. When you read through the record, what you will see is that this is the classic David versus Goliath situation. My client's letters, there are statements that say we don't want to go to court, and they're put in the context of we can't afford to litigate against you. This dispute, you see the affidavits are from William Welborn and Ty Welborn, father and son being caught up in a patent infringement case against a large corporation. They were frustrated. They made statements that said we don't want to go to court against you because we can't afford to do this. But those same letters also talk about there are other options of what they want to do. They said they were going to go after them in court of public opinion to show that Sawgrass's patents were not valid. They said that they would team up with other competitors to try to get financial resources to prove that the patents were not valid. And they said in the letter that talks about saying that they would just stop selling the products, they said we'd stop selling the products until a court declared the patents invalid, which was referring to teaming up with the other parties and using the evidence that will be used in Texas to prove that Sawgrass's patents were invalid and that Texas original graphics was not infringing. How did you come up with the funds to sue in Texas? Your Honor, that's a good question. My clients are doing the best they can to fund the litigation, and every month we have to discuss how much they're paying that month. And so it's a real battle. What this case is about, what this issue on appeal is about, is appellate jurisdiction. I believe it's the beginning and the end of this appeal. There is no case that we are aware of that allows for an interlocutory appeal of a transfer order. Mr. Walker, where was I? Well, let me ask you about that. I mean, I know there were statements you pointed to in Judge Wooden's opinion that really seemed to make clear that he knew that his intent was to transfer and not to dismiss. But how do you explain the one arguably troubling provision in the conclusion, which says he's dismissing the complaint? Well, he grants defendant's motion is granted. Your Honor, I think the answer to that is you need to read the order as a whole because the rest of the order makes it clear what the judge's intent was to do, which is to transfer the case. Last night, preparing for the argument, I came across a very recent case out of the First Circuit I think that's illuminating on how to read an order. It's Subsound v. Watson, 4-12-F-3-41 from September of 2006. First Circuit had a very similar issue where the judge clearly spelled out in the order that there would be transfer of the case, and that one of the orders showed a clear intent to transfer. And at the end, it said motion to dismiss granted the case is transferred. And the court, Judge Sellier from the First Circuit, analyzed the situation and said, you have to read everything in context. And the context showed a clear intent to transfer the case. If you reach a contrary conclusion, the court leaves students in serious problems. And the problems are the contrary conclusion would lead to two losses going forward, one in Texas and one in South Carolina. And I don't believe anyone can agree that that's a good idea to have two losses on the same subject matter. Your Honor, the Texas case has been moving forward since almost a year ago today. I think it's a year ago from tomorrow is when that order was entered on the motion to transfer. The Texas case has been proceeding. There have been proceedings, as Mr. Walker acknowledged. The one that importantly left off is that there's been a full briefing on claim construction issues, on the patent infringement claims. We're just waiting for a ruling from Judge Galpin on claim construction. And there's a trial set in October of 2007, which means we're more than halfway to trial next year. And there's a reason why there should not be appellate jurisdiction here, is we shouldn't be restarting the clock and restarting everything in South Carolina. It's an interlocutory order. Well, that's one option. The other possibility here, I guess, and I'm wrong, is that we would say we do have jurisdiction because it's a motion to dismiss, and we would confirm the motion to dismiss. And I don't know what the repercussions are for that because the case has already been transferred and acted, correct? Your Honor, that is correct. That is certainly one of the options the court has. I think Judge Wooten, although my clients, we actually asked for the dismissal. Mr. Walker was correct when he said this was a solid motion to dismiss or an alternative transfer. Judge Wooten, being very wise, sat back and said, what's the most practical solution to this problem? And the practical solution was to transfer it. We also had a motion to transfer pending on other grounds as well that the judge did not need to reach. But it's clear that our first and final ruling, the judge has three options. It's a discretionary ruling. There's three options. One is to dismiss, one is to transfer, and one is just to stay the case in South Carolina. So that's actually one answer. The last option is one answer to what might happen if this court just outright dismisses it. As Judge Wooten may again say, the practical solution is to stay the case in South Carolina because the Texas case is running. But we don't know that. We're just speculating, just creating a lot of extra proceedings if we reach that point. Your Honor, we do believe that the order is clear and that the order clearly shows Judge Wooten's intent to make this a transfer order. And we do not believe that there's any decision in this country that upholds appellate jurisdiction over a transfer order like this. I would like to briefly touch on one case cited in the reply brief by Sawgrass. It's the Holleyand case from this court. In Holleyand, this court had a case where the district court granted a motion to dismiss for lack of personal jurisdiction and then tried to transfer the case to another district court. This court found in that decision that there was appellate jurisdiction because the motion is dismissed. This case is distinguishable from Holleyand for several reasons. One is Judge Wooten's order is absolutely clear that he was not trying to grant dismissal. He was trying to transfer the case. In Holleyand, the court was granting a dismissal for lack of jurisdiction. The second reason is a jurisdictional dismissal is different than a discretionary first of file ruling. If there's no jurisdiction, there's no jurisdiction. And third, Your Honors, I also believe that Holleyand is inconsistent with other court decisions on the same subject, including the sub-South case that I just cited before from the First Circuit. They had a very similar situation. They concluded there is no jurisdiction over a transfer under the circumstances of that case. In Holleyand- But Holleyand is our case. Yes.  Yes, sir. So if there's an inconsistency between our circuit and other circuits in this area, wouldn't we be compelled to follow our circuit? Your Honor, I believe that obviously you're correct that the First Circuit case is not controlling here. It shows that the proper analysis of the issue in the Holleyand case does not talk about 28 U.S. Code Section 1631, which authorized the district court when it's dismissing a case for lack of jurisdiction to transfer the case to a court that did have proper jurisdiction. The First Circuit does a thorough analysis of the controlling statute. It's not cited anywhere in the Holleyand case. Maybe the parties never brought it to the court's attention. So I just wanted to point that out. But the real distinguishing fact is that it's a different type of dismissal order than what we have in our case. In our case, it's clear that Judge Wooten's order is absolutely clear about it being a transfer, with the exception of the one sentence at the end where he says he's granted a motion, but then he's transferring the case. He should have no intent to do anything other than that. If there aren't any more questions, I will yield my time back. Thank you, Mr. Hastings. Mr. Walker, do you have a few minutes to move on? I'm simply going to address a couple of points that were just made. First, Judge Wooten also stated on the second page of his order, page 8 in the joint appendix, right before the background section, he was granting the motion to dismiss. And he also says, in this case, it's hereby transferred. He does say that, indeed. David and Goliath were much closer to a David than a Goliath. I'm always amused by the portrayal of Mike Lyons as these Goliaths. I know that won't influence the court, but I just don't like to be unfairly accused of being a Goliath. Mike Lyons. It needs to be absolutely clear to this court what the representations were by Ty and William Wellborn. And those appear on the joint appendix at page 114. And page 618 on page 114 is Mr. William Wellborn's letter of May 2nd, saying, if Sawgrass continues their claim that TOG has no leg to stand on- Negotiations, so we'll take a look at the record, of course. Those are the pages that say it all. Thank you. Judge Godbee has not made any substantive rulings in the Texas proceeding. The only ruling he made that I'm aware of, he was the order denied- Have there been proceedings towards claim construction? Yes, there have been filings on claims construction, and there's nothing that would prohibit those from being made in the district court in South Carolina. But there have been no rulings on any of the substantive motions aside from the one that you pointed out, which was the original motion to dismiss Sawgrass. I thank you. I realize that there are serious questions that the court has. I asked you to study the matter more. I thank you for this audience. We would ask that the lower court be reversed, in this case be remanded to the district of South Carolina. Thank you. Thank you. All rise. The honorable court is adjourned until this afternoon at 2 o'clock p.m. Nice work. Thank you.